at all. Good morning, Your Honors. May we please the Court? Yes. This is Jorge Martinez-Luciano on behalf of the Plaintiff's Appellant. May we be allowed to set aside two minutes for rebuttal? Yes, you may. Thank you, Your Honor. Well, Your Honor, this case essentially brings two discrete matters before this honorable Court. First of all, the issue of whether plaintiffs established enough of a controversy of material facts on the issue of pretext to preclude summary judgment as to the University of Puerto Rico on a Title V of the ADA retaliation claim. And the second issue, which I believe is an issue of first impression as far as addressing it head on, which is whether or not the First Amendment may be invoked by a plaintiff who is also claiming retaliation under Title V. I'd like to start with that second question and see if we can get it phrased more precisely. As I understand it, the First Amendment claim is based on your clients asserting a claim for reasonable accommodation to the agency and the complaint she made to the labor union. Is that correct? That is correct, Your Honor. All right. What possible public interest is there in either of those? Why is the First Amendment not invoked? Well, there's a 2011 decision by the Honorable Court addressing precisely whether or not complaints of work discrimination are matters of public interest. We believe that under the Supreme Court decision in Bureau of the Regular B. Warnery, which is the case that explains that First Amendment claims for retaliation may also arise under the right to petition clause. Yes, of course they may. But when it's exactly the same complaint that is covered by the administrative structure, and comprehensively so, why is there any possible First Amendment claim? I can see on other facts that there would easily be a First Amendment claim on matters the public are interested in. But what about this case? And why should we decide an abstract issue if this case simply doesn't permit it? Well, Your Honor, we believe that precisely because languishing the Warnery decision, it states that the invocation of civil rights and civil protections is so important that it is protected by the... You're just... any statement anyone makes is covered by the First Amendment. What's the public interest in this one? There's always a public interest in outlawing discrimination. This is a denouncement of discrimination and precisely that's what the court says in the Warnery decision, that matters of public interest such as violations of civil rights and matters of discrimination are aired out on complaints to the governing bodies, be it administrative bodies or judicial bodies. Therefore, that type of speech, that type of petitioning of relief is protected by the First Amendment. All right, move on. And therefore, there is no jurisprudence from this court precluding the co-existence of Title V ADA claims and First Amendment claims. Quite to the contrary, there's the DBVS Procedural Decision in which two members of the panel were there and the Chief Judge issued a short concurrence pretty much saying that you understood that the majority had spoken too much on several issues and in that case there was a Title V ADA claim and there was a First Amendment claim and those were decided on merits. The First Amendment claim was not rejected outright because it could not co-exist. And as a matter of fact, the First Amendment retaliation claims have co-existed with discrimination rates under special status. Nobody mentions the Supreme Court case of Fitzgerald v. Barnstable School Committee, which is the controlling Supreme Court case on this. Have you looked at it? Quite frankly, I have not looked at the case. But the District Court bases its decision on pre-existing jurisprudence from this court where it had precluded equal protection claims that were predicated on the same grounds that discrimination ADA Title I or Title II claims were. Perhaps you should go back to your first ground. Do you agree if that fails, if your second ground fails? If we fail on the pretext, yes, because that's the merit of the claim, of course. But we believe that there is sufficient evidence of pretext. This is a plaintiff who had reasonable accommodation, was working with reasonable accommodation, had no history of disciplinary actions while she had received the reasonable accommodation of being allowed to go out on emergency, medical appointments and medical emergency visits that her condition required. As I understand the case, there is no claim that she wasn't allowed to go to the bathroom when she needed, go to the doctors when she needed. This has to do with giving notice to the employer? Yes, giving prior notice. It's my understanding that it wasn't just prior notice. Prior notice when prior notice was possible and then notice if prior notice was not possible, such as emails or texting. It was hard to understand why that was not a reasonable employment request. The thing is that she gets reprimanded for not giving prior notice and on every single time that she had to go on an emergency medical appointment, she provided the subsequent medical documents, which is why all her medical leaves were paid. There is not a single instance of even five minutes that were not credited to sick leave because she failed to properly document her medical absence. Was there something about her medical condition that made it impossible for her to give reasonable prompt notice through text or emails? Or in the event that she was leaving, I believe they asked her to punch a time clock and she refused to do that? Is there something about her condition that didn't allow her to do that? As to the issue of her refusing to use the punch clock, she contests that. But the type of emergency that she had was intestinal bleeding, sudden diarrhea. When you have a situation of that sort, you just leave. If you're bleeding out of your intestine, you need to get that checked and in 2009 she had a flare-up of her Crohn's disease and she had several episodes of this. But we still don't understand why she couldn't send a text or an email, even under those circumstances, notifying the employer that she wasn't there. The place is empty. Students come up during the periods when she's not there. The employer has a legitimate need to see that there's somebody there. Well, Your Honor, Exhibit A of our opposition to summary judgment is deposition testimony where the plaintiff contests that version given by her supervisor. She says that she did give notice as soon as possible, via text, via emails. There are five or six different memos to her saying, here's the requirement. You once again failed to comply with it on these occasions. Yes, and every single one of those memos is closely timed after she makes an accommodation request or she otherwise makes an effort to assert her rights. For instance, on March 13th, and this is Exhibit B of our opposition, she files a letter from a medical expert from the UPR saying, may we finish this slide, stating that she needs the reasonable accommodation that she previously had of unannounced emergency absences. And five days later, March 18th, she gets an admonishment. But we'll continue on our rebuttal. May it please the Court, Edna Perez-Román on behalf of the University of Puerto Rico. Your Honors, the University respectfully requests that you affirm the judgment of the District Court because the record clearly shows that Maria Collazo was unable to raise a triable issue with regards to the ultimate question, which with regards to the University, is whether the true reasons for not renewing her one-year contract was retaliation. In this case, Your Honors, the reason why she wasn't able to comply with that burden of proof under the McDonnell-Douglas burden shifting analysis test is that this is simply not retaliation. This is an employee who tried to take advantage of a medical condition and used it as a shield against accountability. She asked for and was requested a reasonable accommodation consisting on a seating position with ready access to a bathroom and flexibility to attend her medical appointments. But what she really wanted was a license, a free pass, to come and go as she pleased and not have to answer to anybody. There is no reason to attack the plaintiff. There is a reason to explain to us why she either didn't comply with requirements. I apologize, Your Honors. The record clearly shows that the University had in place an attendance policy since 2007 and Maria Collazo had been made aware of that. She received a memo in 2007 from her prior supervisor stating to all employees that they had to electronically punch in when they came in or left the premises and she insisted on doing so manually. Furthermore, when she started working under Professor Gomez, Professor Gomez also advised her as well as the rest of the employees within the center that they had to comply with these time clocking instructions as well as inform them that they had to notify any time they left early, came in late, or were to be absent. The memoranda that was sent to her, at least three memos were sent to her because of her noncompliance with the attendance policy prior to her talk with the employers union and prior to her EEOC claims. So in that regard, it is the position of the University that her claims of discrimination and retaliation were subsequent and in response to these reprimands were duly justified. Further, counsel has stated that there were, I'm sorry. Can I just ask you a factual question, please? Yes. Where is the time clock in relation to the exit door? It was right next to, it was right next to the doorway. All right, so you have to pass it in order to get out. That is correct. And to that point, she, during her deposition, she explained that the only times when she actually manually entered her entries or comments out was when there was no electricity. However, documentation produced, which is in the record, has her written statement saying, I forgot to punch in, I was distracted, and matters of that sort. There are two documents in the record that caused me to scratch my head some. One is a denial of an accommodation request from the internal administrative body of some of her non-renewal that doesn't cite anything about her not giving notice for absences. What do we make of those two documents? Okay, with regards to the first one, the letter does not deny her request for reasonable accommodation. The letter merely states that what she's claiming is not a reasonable accommodation because the accommodation is already in place. The complaints that she brought before the reasonable accommodation committee were the discrepancies she had with her supervisor. So to that effect, what they say is this is not really about a reasonable accommodation. You already have the one that you asked for. This is more of a dispute between the manners in which you handle things internally, and therefore, it should be referred to the labor relations department. And what about the notice of non-renewal? Well, the notice of non-renewal merely states that, you know, for the last couple of months, the director of the center, along with the supervisor of Maria Collazo, have been discussing the position that she held, the mentors coordinator, that they would discuss the tasks, the projections, things of the sort, and that some changes were required, and that her services would no longer be required. Be mindful that she was under a one-year contract, so, you know, they just didn't I was struck by that. If your entire brief seems to depend on her not giving notice, and then you give her the reasons for the non-renewal of her contract, and you don't even mention that, although I suppose it could be inherent in the desire to restructure, but it's most peculiar. And he, of course, then makes the argument that your reasons keep shifting. May I quickly address that question? Yes. Yes, Your Honor. Well, this is precisely the position of the university. The reasons given subsequently to litigation are not inconsistent with the reason originally given. These are the specific reasons which underlie the changes that need to be made in the center. So the fact that they weren't explicitly given during that time in no way controverts the reality and the truth of the reasons that were given subsequently. I have another question. In the record, the supervisor relies in part for investigating further on two professors who call her who have concerns that she's not doing her job very well, the students aren't getting anything out of the center. But there's nothing in the record from those two professors. Actually, there is the declaration of Professor Roland Tremont. It was an attachment to the reply. And what does it say? It basically states, it doesn't name Plenty Fablan, but it states that he's having concerns because the person in charge of the center is not meeting with him to discuss how the students that are taking the tutoring and the mentoring are progressing, and they're not taking into account that he hasn't had the opportunity to meet with her to express the things. And he confirms that he made that complaint to the supervisor. Correct, he does. Anything else? Thank you. Good morning. May it please the court. My name is Mayra Gonzalez. I'm counsel for Professor Gomez. We ask this honorable court to affirm the judgment of the district court dismissing the causes of action filed against Professor Gomez in her individual capacity for two reasons. The first one, because Mrs. Collazo lacks a cause of action against Professor Gomez, in her individual capacity under Section 183 of the Civil Rights Act. The second one, under the doctrine of qualified immunity, Professor Gomez was just acting as a supervisor, wanted to be able to evaluate the performance of her employee. It is well known that Section 1983 is not a source of substantive rights itself, but is available to file another causes of actions. However, when we are talking about a statute with a specific and comprehensive remedial scheme, like the ADA, an individual plaintiff cannot resort to Section 183 to file a cause of action. The last time this court adopted that position, we were reversed by the Supreme Court unanimously. That's the decision that I referred to. The argument you're making is, in fact, enormously complicated, if you look at it independently of what you gave the district court. And I'm not at all convinced we need to decide such a broad argument. I opened with the suggestion that even if, in some occasions, there was a First Amendment claim that was coincident to an ADA claim, that that doctrine didn't apply here because nothing she said went to the public interest. She was pursuing her private interests. That does appear at some point in someone's briefs. But I have a hard time understanding why a complaint to the ADA that you need a reasonable accommodation falls within the First Amendment. If we hold that, then we've created a vast body of case law about all sorts of statutory nondiscrimination programs. I agree, Your Honor. This is just a case that even if plaintiff will have been able to comply with the strict requirements of a First Amendment cause of action, she will also fail under the doctrine of qualifying immunity. You know, this is a complaint basically stating Professor Gomez was punishing me because I request I exercise my right to continue having a reasonable accommodation. Professor Gomez was not violating with her actions, with the actions in this case, that were simply wanted to know with reasonable notice the whereabouts of Ms. Collazo, where she was, at what time, and that she advise her or anyone competent enough in the center of her whereabouts the reasons why she was absent. Then, Mrs. Gomez was just acting like a supervisor, as someone wanted to be able to evaluate the performance of Mrs. Collazo. There's no constitutional right, even if you suffer for a medical condition, to be able to come and go, to be able to be absent without notice, to arrive early. There's no constitutional right to do that. There's no clearly legal right to do that. The ADA is a statute that gives protection for persons that, despite her conditions and some medical conditions, are willing and able to perform their duties. And the courses are very empathic to those persons. Thank you. Mr. Martinez. Very quickly, I want to address regarding the question posed by Judge Thompson to Council for the University. There is no evidence on the record whatsoever as to where the Punch Club was located on this summer judgment record. As a matter of fact, I don't know where the Punch Club was located. And also, there was a letter, a question from Judge Chiata, regarding whether or not there was a letter denying reasonable accommodation. Indeed, the letter, and the letter is on the record, explicitly denies a request for accommodation. But how does it define the request? That it denied. It defined a denial of request of reasonable accommodation because the committee stated that they believed that what was going on was a dispute between supervisor and supervisee, even though they required a formal reasonable accommodation form, which was filed by the plaintiff on the 13th.  Sorry, Your Honor. What was the request for accommodation specifically that it denied? That she be allowed to attend emergency medical situations without prior notice, which was substantiated by a letter filed on March 13, 2009. But at the end of the day, this case... I have a vague memory of this, but I thought the letter said she has been allowed to leave on emergency basis. There is a notification requirement. She's not getting along with her supervisor, and so we think she has been given an accommodation. And to the rest of this, if that's what she means, we're not denying her. I believe that the letter does not address whether or not a type of accommodation exists, but it pretty much states that this is a matter that should be referred to a department, which is an employee assistance program is what they call it, so they can have these parties mediate. Is there any evidence in the record at all of any occasion in which your client took a leave and gave notice, sent an email, sent a text, and got disciplined for that? Yes. Well, on Exhibit A of our opposition, which is excerpts from the plaintiff's deposition, she testified that she sent text messages and she notified as soon as possible. That is her testimony. Of course, we don't have text messages. It's not something that you keep a record of. No, no, no. I'm looking for an alignment between an occasion in which she complied with the policy and got disciplined or reprimanded in some way. Well, her position is that in every single instance where she received a reprimand, she complied with the policy. She notified as soon as possible. As a matter of fact, it all boils down to the fact that this is, as you heard from counsel from the defendants, the position of the UPR seems to be that this is a terrible employee, yet she gets a notice of non-removal that not only does not mention that, it doesn't mention her performance at all, and all this supposed evidence of how terrible the employee is comes in in a motion for summary judgment in a federal suit. And we believe that there's a long body of law that suggests that that is provocative of pretext  Thank you. Thank you.